# THE IVERSON KING SPECIAL NEEDS TRUST

**EXHIBIT "A"**

## TABLE OF CONTENTS

ARTICLE I .................................................... 4
    PURPOSE ............................................... 4

ARTICLE II ................................................... 5
    TRUST FUNDING ......................................... 5
        2-1    Initial Trust Funding ........................... 5
        2-2    Additions To Trust ............................. 5

**ARTICLE III** ................................................. 5
    REVOCATION ............................................ 5

ARTICLE IV .................................................. 5
    DISPOSITION OF TRUST ESTATE .......................... 5
        4-1    Introduction .................................. 5
        4-2    Special Non-Support Needs ..................... 6
        4-3    Trustee Guidelines ............................ 6
        4-4    Spendthrift ................................... 7
        4-5    Public Benefits ................................ 7
        4-6    Supplemental ................................. 7
        4-7    Trust Termination ............................. 8
        4-8    Termination Upon Death ....................... 8
        4-9    Expenses .................................... 8
        4-10   Tax Provision ................................ 9
        4-11   Separate Fund ............................... 9
        4-12   No Perpetual Trusts .......................... 9

ARTICLE V ................................................... 9
    TRUSTEE PROVISIONS .................................. 9
        5-1    Trustee Compensation ......................... 9
        5-2    Trustee Liability .............................. 10
                A.    Liability For Predecessor Fiduciary ...... 10
                B.    Reimbursement ...................... 10
        5-3    Ancillary Trustee ............................. 10
        5-4    Reorganization Or Insolvency Of Corporate Trustee .... 10

ARTICLE VI .................................................. 11
    ADMINISTRATIVE PROVISIONS .......................... 11
        6-1    Investment Authority ......................... 11
        6-2    Management Authority ........................ 11
        6-3    Records, Books Of Account, And Reports ........ 12
        6-4    Applicability Of Texas Trust Code ............... 12
        6-5    Additional Transfers Of Property ............... 12
        6-6    Majority Controls ............................ 12

6-7 Resignation . . . . . . . . . . 12
6-8 Removal of Trustee . . . . . . . . . . 12
6-9 Appointment of Successors . . . . . . . . . . 13

ARTICLE VII . . . . . . . . . . 13
GENERAL PROVISIONS . . . . . . . . . . 13
7-1 State; State Plan . . . . . . . . . . 13
7-2 Execution . . . . . . . . . . 13
7-3 Pronouns, Singular and Plural . . . . . . . . . . 13
7-4 Execution In Counterparts . . . . . . . . . . 13

## EXHIBIT "A"

## THE IVERSON KING SPECIAL NEEDS TRUST

THIS TRUST AGREEMENT is made and entered into this _____ day of _____, 2007, by Order of the Honorable David Bramlett, Judge of the United States District Court for the Southern District of Mississippi, Western Division, (hereinafter referred to as Grantor) regarding IVERSON KING and THE CENTER FOR SPECIAL NEEDS TRUSTS ADMINISTRATION, INC. (hereinafter referred to as "Trustee"). The beneficiary is IVERSON KING, a disabled person, as defined in the Social Security Act, § 1614 (a)(3), 42 U.S.C. § 1382c (a)(3) (hereinafter referred to as Beneficiary). This Trust is created, established, and funded for the purpose of providing for the special and supplemental needs of IVERSON KING, the sole Beneficiary hereof. The Trust created, established, and funded hereunder shall be known as the IVERSON KING SPECIAL NEEDS TRUST. This Trust created, established, and funded herein by Order of Judge David Bramlett of the United States District Court for the Southern District of Mississippi, Western Division, is a result of the following lawsuit: Wanda King, On Behalf Of Her Minor and As Next Friend, Iverson King vs. Dr. Angela Savatiel and Vicksburg Healthcare, LLC d/b/a River Region Medical Center. This trust is established under 42 United States Code Section 1396p(d)(4)(A), as amended August 10, 1993, by the Revenue Reconciliation Act of 1993, Pub. L. 103-55.

## ARTICLE I
## PURPOSE

It is the principal purpose and the intent of the Grantor and parties herein to provide a system for fund handling, fiscal management, investment and disbursement, respite care, personal attendant services, advocacy, social development services, rehabilitation care management and moral guidance for IVERSON KING.

It is the secondary intention of the Grantor and parties hereto to provide for a continuing conservation and enhancement of the funds in this trust to supplement all other financial funds and service benefits to which IVERSON KING might be eligible as a result of his disability from any local, county, state or federal agency, or through any public or private profit or non-profit corporations or agencies. It is further the intention of the Grantor to create, establish, and fund a purely discretionary supplemental non-support care fund and not to displace financial assistance that may otherwise be available to him.

IVERSON KING was born on May 5, 2003. He currently needs and will continue to need in the future extensive medical, nursing, rehabilitation and hospital care. He is not currently the beneficiary of a trust or trusts. He is the plaintiff in a lawsuit as set forth above and he will receive funds as a result of the settlement of this lawsuit. These funds are directed to this trust by Order of Judge David Bramlett of the United States District Court for the Southern District of Mississippi, Western Division. In creating, establishing, and funding this Trust in addition to the aforementioned purposes it is also the Grantor's intention to create, establish, and fund a supplemental needs trust wherein all of IVERSON

4

KING's funds can be administered in an efficient and coordinated fashion.

## ARTICLE II
## TRUST FUNDING

2-1   **Initial Trust Funding.**   This Trust shall be initially funded with the assets described in Exhibit A-1 attached hereto. By execution of the order creating, establishing, and funding the trust, the Grantor hereby assigns, conveys, transfers and delivers the described assets to Trustee on even date herewith.

2-2   Additions To Trust. Other property, real or personal, may be transferred to Trustee by anyone with the consent of the Trustee. All property held by the Trustee may be referred to herein as the "Trust Estate."

These funds are directed to this Trust by specific order of the Court and at no time prior to the payment of these funds to the Trustee are these sums to be considered the property of the Beneficiary.

## ARTICLE III
## REVOCATION

This Trust shall be irrevocable. The **Beneficiary** shall have no power or right, whether alone or in conjunction with others, in whatever capacity, to alter, amend, revoke, or terminate this Trust, or any of the terms of this trust agreement, in whole or in part, or to designate the persons who shall possess or enjoy the Trust estate, except as is set out in this instrument.

## ARTICLE IV
## DISPOSITION OF TRUST ESTATE

During the lifetime of IVERSON KING, the Trust estate shall be held, administered, and distributed as follows:

4-1   Introduction. IVERSON KING suffers from a disability which substantially impairs his ability to provide for his own care and custody and which constitutes a substantial handicap. IVERSON KING resides at home with his parents. He needs ongoing assistance in his activities of daily living. It is not expected that IVERSON KING will experience significant improvement in his impaired development in the future. As a result of his disability, he is not and will not be capable of managing the funds provided in the lawsuit referred to above. The severity of IVERSON KING's disability will cause him to require continuing support, assistance and supervision for the remainder of his life. The funds provided by this aforementioned judgment will be insufficient to provide for all such care and support. It is the intent of the parties hereto in creating, establishing, and funding this Trust that it continue in existence as a supplemental (and emergency) fund to public assistance for IVERSON KING throughout his life. Currently, there exists basic living needs such as dental care, companion care and special equipment which public benefit programs for the disabled do not provide. It is vitally important that IVERSON KING continue to have these programs in order to maintain a level of human dignity and humane

5

care. If this Trust were to be invaded by creditors, subjected to any liens or encumbrances, or cause assistance benefits to be unavailable or terminated, it is likely that the Trust corpus would be depleted prior to IVERSON KING's death, especially since the cost of care for disabled persons (not including any emergency needs) is high. In this event, there would be no coverage for emergencies or supplementation for basic needs. The following trust provisions should be interpreted by the Trustee in light of these concerns and stated intent.

4-2     Special Non-Support Needs. The Trustee shall apply for the benefit of IVERSON KING, for his lifetime, such amounts from the principal or income, up to the whole thereof, as the Trustee in the Trustee's sole and absolute discretion may from time to time deem necessary or advisable for the satisfaction of the Beneficiary's supplemental non-support needs, if any. Any income not distributed shall be added annually to principal. Distributions shall be limited so that the Beneficiary is not disqualified from receiving public benefits to which he is otherwise entitled, and this trust shall be administered so as to supplement not supplant such benefits. The Trustee may, however, make distributions that would reduce public benefits without terminating the Beneficiary's eligibility for such benefits. The Trustee may make a distribution that would be considered income to a Beneficiary eligible for benefits under the Supplemental Security Income program that would result in a reduction of benefits to the Beneficiary under the "Presumed Maximum Value Rule" or the" One-third Reduction Rule" so long as such distribution will not cause the Beneficiary to be disqualified from the program.

4-3     Trustee Guidelines. It is the intention of the Grantor to create, establish, and fund a supplemental and emergency fund for the special non-support needs of the Beneficiary and not to displace assistance which may otherwise be available to Beneficiary. As used in this instrument, "special non-support needs" refers to the requisites for maintaining the Beneficiary's good health, safety and welfare when in the discretion of the Trustee such requisites are not being provided by any public agency, office or department of any city, county, or state government, or by the federal government or any other public or private agency or are not otherwise being provided by other sources of income available to him. The Beneficiary may have supplemental or special needs such as dental care, psychological support services, recreation and transportation, supplemental nursing care and similar care which other assistance programs may not otherwise provide. The Trustee is directed to consider these needs when making distributions. Illustrative of the kinds of supplemental, non-support disbursements that would be appropriate for the Trustee to make from this Trust for IVERSON KING include but are not limited to: sophisticated medical or dental or diagnostic work or treatment for which there are not funds otherwise available, including plastic surgery or other non-necessary medical procedures; private rehabilitative training; differentials in cost between housing and shelter for shared and private rooms in institutional settings; supplemental nursing care and similar care that assistance programs may not otherwise provide; telephone and television service, companion care, dental expenses, therapies or supplies to provide tactile stimulation, holistic, herbal or other alternative therapies or services, special equipment such as an electric wheelchair, programs of training, education and social, recreational and entertainment opportunities; advocacy, personal attendant care, legal services, companions for travel, reading, driving and cultural experiences; payments to bring his

6

relatives and friends for visitation and to accompany him on periodic outings and vacations, and travel in the event that the Trustee deems such items appropriate and reasonable. The Trustee may purchase, hold, and maintain assets in the name of the Trust or in such other manner as the Trustee deems appropriate (such as business interest, residence, or automobile) that the Trustee deems in its sole discretion to be reasonably needed for the special needs of the Beneficiary, notwithstanding any restrictions under this agreement or under the law that might otherwise make these types of assets improper investments of the Trust estate. The Trustee may not make a distribution which discharges a legal or contractual obligation of the Trustee.

    4-4    Spendthrift. This is a Discretionary Non-Support Spendthrift Trust. No interest in the principal or income of this Trust shall be anticipated, assigned or encumbered, or shall be subject to any creditor's claim or to legal process, prior to its actual receipt by the Beneficiary. Furthermore, because this Trust is to be conserved and maintained for the supplemental non-support needs of the Beneficiary who may be medically disabled or impaired throughout his lifetime, no part of the Trust estate, neither principal nor undistributed income, shall be construed as part of the Beneficiary's "estate" or be subject to the claims of voluntary or involuntary creditors for the provision of care and services, including residential care, by any public entity, office, department or agency of any city, county, or state government, or by the federal government or any other public or private agency. Under no circumstances can the Beneficiary compel a distribution.

    4-5    Public Benefits. Because the Beneficiary is disabled and unable to maintain and support herself independently, the Trustee shall, in the exercise of the Trustee's best judgement and fiduciary duty, seek support and maintenance for the Beneficiary from all available public resources, including Supplemental Security Income (SSI), Federal Social Security Disability Insurance (SSDI), and any other appropriate state or local agency serving the disabled. Further, the Trustee should cooperate with the Beneficiary's guardian, or legal representative to seek support and maintenance for the Beneficiary from all available resources. In making distributions to the Beneficiary for her special needs, as herein defined, the Trustee shall take into consideration the applicable resource limitations of the public assistance programs for which the Beneficiary is eligible.

    It is recognized that the Trustee is not licensed nor skilled in the field of social sciences. The Trustee may seek counsel and assistance of any state and local agencies that are established to assist the disabled. The Trustee should use any available resources, including consultants, to assist in identifying programs that may be of social, financial, developmental or other assistance to the Beneficiary. Trustee shall not in any event, however be liable to the Beneficiary or the remainder beneficiary of this Trust or any other party for acts undertaken as Trustee in good faith. The Trustee shall not be liable for failure to identify all programs or resources that may be available to the Beneficiary because of her disabilities.

    4-6    Supplemental. No part of the corpus of the Trust created, established, and funded herein shall be used to supplant or replace public assistance benefits of any city, county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to the impairment(s) of the Beneficiary herein. No part of the Trust shall be used to supplant or replace benefits due from any insurance carrier under any insurance policy covering the Beneficiary. For

7

purposes of determining the Beneficiary's public assistance eligibility, no part of the principal or undistributed income of the Trust estate shall be considered available to said Beneficiary. In the event the Trustee is requested to release principal or income of the Trust to or on behalf of the Beneficiary to pay for benefits, medication, or services which such public assistance is otherwise authorized to provide (were it not for the existence of this Trust), or in the event the Trustee is requested to petition the Court or any other administrative agency for the release of Trust principal, interest or income for this purpose, the Trustee is authorized and directed to deny such request. The Trustee is authorized, in the Trustee's sole discretion, to take whatever administrative or judicial steps may be necessary to continue the public assistance program eligibility of the Beneficiary, including obtaining instructions from a court of competent jurisdiction ruling the Trust corpus is not available to the Beneficiary for such eligibility purposes. Any expenses of the Trustee in this regard, including reasonable attorney's fees, shall be a proper charge to the Trust estate. In carrying out the provisions of this Trust, the Trustee shall be mindful of the probable future needs of the Beneficiary but not of the Trust remainder beneficiaries.

  4-7 <u>Trust Termination</u>. Unless earlier terminated under the provision of this instrument, this Trust shall cease upon the death of the Beneficiary. Any assets remaining in the Trust upon the death of the Beneficiary shall first be used to reimburse the "State" or an agency acting on its behalf, currently Texas Health and Human Services Commission, for medical assistance paid on behalf of the Beneficiary during the administration of this Trust to the extent required by applicable law. It is the intention of the Grantor to create a vested remainder in the "State." Assets remaining in the Trust after such reimbursement shall be distributed as set forth in Article IV Section 9 below.

  4-8 <u>Termination Upon Death</u>. Upon the death of the Beneficiary, Trustee shall distribute the remaining Trust Estate to such persons, in such amounts, and upon such terms, trusts and conditions as the Beneficiary shall appoint under the terms of his last Will and Testament, making specific reference to this power. In the event that the Beneficiary has not validly exercised this power to appoint by Will, the remaining Trust Estate shall be distributed to those persons who would be the heirs of the Beneficiary had the Beneficiary died intestate. The distribution of Trust property, for purposes of this Section, shall be determined by the laws of descent and distribution for intestate estates by the State of Texas Probate Code in effect at the time of any distribution under this section.

  4-9 <u>Expenses</u>. Upon the death of IVERSON KING, the Trustee may pay any death taxes that may by reason of said Beneficiary's death be due regarding assets passing in accordance with these Trust provisions or otherwise, and expenses related to administration and distribution of the Trust estate if, in the Trustee's discretion, other satisfactory provisions have not been made for the payment of such expenses. The Trustee shall make no payments for obligations incurred for said Beneficiary's health, support and maintenance if the Trustee shall determine in its discretion that payment therefore is the obligation of any city, county, state, federal or other governmental agency which has a legal responsibility to serve persons with disabilities which are the same or similar to the impairment(s) of the Beneficiary herein.

  4-10 <u>Tax Provision</u>. The Trustee hereunder shall pay any income tax liability of the Beneficiary which results from income received by the Trust properly reported on the income tax return of the Beneficiary. The funds used to pay any such income tax liability

shall be paid directly to the appropriate tax authority and shall not be available to the Beneficiary. The Beneficiary shall not have any right to or interest in any such funds paid by the Trustee. Any such funds are not a resource of the Beneficiary and should not be treated as a distribution of income for purposes of Medicaid qualification.

In the event of a tax refund any amount refunded shall be paid directly to the Trustee to the extent such refund is attributable to amounts previously paid by the Trustee. For purposes of determining whether an amount is attributable to such prior payments, any refund (including interest thereon) shall be attributed to amounts previously paid by the Trustee to the extent the Trustee made any tax payment for the relevant tax year which has not been previously refunded. For purposes of determining whether an amount previously paid has been previously refunded, any interest included as part of a refund shall not be used to offset a previous payment by the Trustee.

The Beneficiary or their guardian shall execute any letters, powers of attorney or other documents required or requested by the taxing authority in order to allow payment of any refund to the Trustee.

4-11   Separate Fund. All public assistance benefits for the Beneficiary of this Trust and all earnings of the Beneficiary of this Trust shall not be commingled with other Trust assets but shall be separately held by the Trustee. Nothing in this provision shall be construed to require the addition to the Trust Estate of either public assistance benefits or earnings received by, or on behalf of, any beneficiary herein.

4-12   No Perpetual Trusts. Unless terminated at an earlier date under the foregoing provisions, any trust created, established, and funded under this agreement shall cease on the date which is twenty-one (21) years after the decease of the last to survive of the beneficiaries alive or in being at the time of the creation of the Trust and thereupon the Trustee shall distribute and deliver all of the balance of any share of the Trust estate or any portion thereof then held for the benefit of a living beneficiary of said Trust to such beneficiary or to their legal representative.

## ARTICLE V
## TRUSTEE PROVISIONS

The provisions of this Article govern the fiduciary relationship of the Trustee. When used in this instrument, where the context permits, the term Trustee means the trustee or co-trustees from time to time serving and the "estate" of the Trust means the particular trust estate being administered by the Trustee.

5-1   Trustee Compensation. An individual or entity serving as Trustee shall be reimbursed from the estate for the reasonable costs and expenses incurred in connection with the administration of the estate and the Trustee shall be entitled to receive fair and reasonable compensation for services as Trustee to be paid from the Trust's income, corpus, or both on application to and approval of the Court; provided, however, that the Trustee's compensation shall not exceed the Trustee's regularly published fee schedule for such services. The Court hereby approves future Trustee's fees for so long as such fees do not exceed the Trustee's regularly published fee schedule attached as Exhibit A-2; provided that the Court may review any future Trustee's fees at any time and from time to time on the Court's own motion or upon the motion of the Trustee or any other party

interested in the welfare of the Beneficiary, and upon a hearing of the matter, the Court shall take any action with respect to such fees as the Court may deem appropriate. The Trustee shall also be reimbursed for all reasonable expenses incurred in connection with the administration of the trust considering: (a) the duties, responsibilities, risks, and potential liabilities undertaken; (b) the nature of the estate; (c) the time and effort involved; and (d) the customary and prevailing charges for services of a similar character at the time and at the place such services are performed.

5-2   Trustee Liability.

A.   Liability For Predecessor Fiduciary. No Trustee shall have any duty: (a) to investigate the prior acts or failures to act of a Predecessor Fiduciary (including a predecessor Trustee under this instrument or a personal representative or trustee of any estate or trust from which distributions may be made to the Trustee); (b) to request a formal accounting by a Predecessor Fiduciary; or (c) to investigate any accountings provided by a Predecessor Fiduciary. No Trustee shall be personally liable for any act or failure to act of a Predecessor Fiduciary, or for the failure to contest any accounting provided by a Predecessor Fiduciary. However, the preceding shall not apply to any Trustee to the extent that the Trustee (a) has received a request from a beneficiary having a material interest in the trust estate to secure such an accounting or to conduct such an investigation, or (b) has actual knowledge of facts that would lead a reasonable person to believe that, as a consequence of any act or omission of a Predecessor Fiduciary, a material loss has occurred or will occur.

B.   Reimbursement. An individual or entity serving as Trustee shall be entitled to reimbursement from the estate for any liability or expense, whether in contract, tort or otherwise, reasonably incurred by the Trustee in the administration of the estate.

5-3   Ancillary Trustee. The Trustee, to the extent permitted by applicable law, may appoint (and remove) any Qualified Corporation (meaning any corporation having trust powers that is qualified and willing to serve under this instrument and that has, as of the relevant time, either (a) a minimum capital and surplus of at least Five Million Dollars ($5,000,000 U.S.), or (b) at least Fifty Million Dollars ($50,000,000 U.S.) in trust assets under administration) to act as ancillary trustee on such terms as the Trustee may deem appropriate.

5-4   Reorganization Or Insolvency Of Corporate Trustee. If a corporation nominated to serve or serving as the Trustee shall ever change its name, or shall merge or consolidate with or into any other bank or trust company, such corporation shall be deemed to be a continuing entity and shall continue to be eligible for appointment, or shall continue to act as the Trustee.

<div style="text-align:center">

## ARTICLE VI
## ADMINISTRATIVE PROVISIONS

</div>

6-1   Investment Authority. The Trustee shall invest the assets of the estate in proper and prudent investments with due regard to reasonable diversification, considering

the entire portfolio of its estate (and the entire portfolio of any collective investment vehicle, as the case may be) rather than on an individual asset basis. To the extent consistent with the foregoing; (a) a corporate entity serving as Trustee may deposit funds with itself and may place funds under its administration in common trust funds; and (b) the Trustee may acquire securities, real estate, life insurance, oil, gas and other mineral interests, and other investments.

  6-2 <u>Management Authority</u>. The Trustee may exercise the managerial powers of an individual with respect to matters affecting the estate and the broadest managerial discretion that is consistent with the reasonable and prudent management and administration of the estate, including the following managerial authorities: (a) the Trustee may manage, sell, lease (for any term, even if beyond the anticipated term of the estate), partition, improve, repair, insure, and otherwise deal with all property of the estate; (b) the Trustee may form, reorganize or dissolve corporations, give proxies to vote securities, enter into voting trusts, and generally exercise all rights of a stockholder; (c) the Trustee may take whatever action, if any, the Trustee considers best to collect the proceeds of life insurance policies and employee benefit plans as well as any other property that may be tendered to the Trustee; (d) the Trustee may pay all taxes and all reasonable expenses, including reasonable compensation to the agents and counsel (including investment counsel) of the Trustee; (e) the Trustee may employ and compensate advisors and agents and delegate to an agent any authorities (including discretionary authorities); (f) the Trustee may institute and defend suits and release, compromise or abandon claims; (g) the Trustee may hold title to any property in the name of one or more nominees without disclosing the fiduciary relationship; (h) the Trustee may lend money to any entity with or without security, endorse, guarantee, provide security for, or otherwise become obligated with respect to the debts of any entity, provided that all such transactions (except those for the benefit of any beneficiaries of the particular estate involved) must be on commercially reasonable terms; (i) the Trustee may assume, renew and extend any indebtedness previously created and borrow for any purpose (including the payment of taxes or expenses) from any source (including a Trustee individually) at the then usual and customary rate of interest, and mortgage or pledge any property of the estate to any such lender; (j) the Trustee may make partial distributions to any beneficiary, including any trust created by this instrument, whether or not the administration of the estate is complete; (k) the Trustee may retain, sell or distribute in kind any personal residence and any furnishings of such residence; (l) the Trustee may store personal effects given to a minor or other incapacitated beneficiary for later distribution to such individual, or sell such property and add the proceeds of sale to a trust of which individual is a beneficiary; (m) the Trustee may divide, allocate or distribute property of the estate in undivided interests, non pro rata, and either wholly or partly in kind; (n) for administrative and investment purposes only, the Trustee may hold separate estates under this or any other instrument in one or more common accounts in which such estates have undivided interests; (o) the Trustee may allocate receipts and disbursements between principal and income in a reasonable manner, and may establish a reasonable reserve for depreciation or depletion and fund such reserve by appropriate charges against income of the estate; and (p) the Trustee may take all appropriate action to deal with any environmental hazard and comply with any environmental law, regulation or order, and may institute, contest or settle legal

proceedings concerning environmental hazards.

6-3   Records, Books Of Account, And Reports. The Trustee shall maintain proper books of account which shall at all reasonable times be open for inspection or audit by IVERSON KING, beneficiary, or any court appointed guardian for the beneficiary, or his care taker(s). The Trustee shall make a written financial report, at least annually, to IVERSON KING, beneficiary, or any court appointed guardian for the beneficiary, or his care taker(s). The Trustee's usual computer statements shall suffice for any accounting. The Trustee shall not be accountable to any person interested in this trust for the manner in which, in good faith, it carries out its discretion to supplement the needs of the primary beneficiary (including any decision it may make not to incur the expense of detailed analysis of alternative choices) and, even though its decision in this regard may result in decreased distributions to the contingent beneficiaries of this trust, there shall in no event be any compensation readjustments or reimbursements by the Trustee by reason of the manner in which the Trustee thus carries out its discretion.

6-4   Applicability Of Texas Trust Code. To the extent consistent with the other provisions of this instrument, the Trustee shall have the powers, duties, and liabilities of trustees set forth in the Texas Trust Code, as amended and in effect from time to time. However, any legislation enacted subsequent to the date of this instrument which limits a Trustee's duties or liability to the beneficiaries of the estate shall be inapplicable to every trust created under this instrument, and the Trustee's acceptance of office under this instrument shall constitute an irrevocable agreement that no such subsequent legislation shall be applicable.

6-5   Additional Transfers Of Property. Any additional transfer of property to this Trust shall be absolute; provided, however, that the duties of the Trustee shall not be increased by virtue of any such transfer without the consent of the Trustee.

6-6   Majority Controls.   All actions taken by Trustees hereunder shall be taken only with the agreement of a majority of Trustees which majority shall include the corporate Trustee if one is then acting.

6-7   Resignation. Any trustee may resign by giving thirty (30) days written notice to a beneficiary. If a beneficiary is legally incapacitated, the notice shall be delivered to that beneficiary's legal representative. The Trustee may not resign without receiving prior authorization of the Court under whose authority this Trust was created, established, and funded.

6-8   Removal of Trustee. Any interested person herein, including, but not limited to the Beneficiary, the Beneficiary's legal representative, the Beneficiary's parents or contingent beneficiaries, may petition the Court under whose authority this Trust was created, established, and funded or any court of competent jurisdiction for removal of any Trustee, the decision on whether to remove any Trustee shall be in the exclusive discretion and control of the court.

6-9   Appointment of Successors. Any court of competent jurisdiction shall have the power to fill any vacancy in the Trusteeship resulting from the death, resignation, removal or incapacity of the Trustee.

## ARTICLE VII
## GENERAL PROVISIONS

7-1  **State; State Plan.** References to the "state" means the state of Texas and all other states, if any, that may ever pay medical assistance on IVERSON KING's behalf under a state plan at a time when the existence of this Trust, were it not described in 42 USCA § 1396p(d)(4), would disqualify IVERSON KING for state plan benefits. References to a "state plan" means any plan under Title 42 of the United States Code Annotated ("The Public Health and Welfare"), Chapter 7 ("Social Security"), Subchapter XIX ("Grants to States for Medical Assistance Programs") and any other "plans" for purposes of 42 USCA § 1396p(d)(4).

7-2  **Execution.** The Trustee hereby accepts the Trust herein created, established, and funded and covenants and agrees to and with the Grantor in consideration thereof that the Trustee will execute the same as herein provided.

7-3  **Pronouns, Singular and Plural.** Unless the context requires otherwise, words denoting the singular may be construed as denoting the plural, and words of the plural may be construed as denoting the singular, and words of one gender may be construed as denoting such other gender as is appropriate.

7-4  **Execution In Counterparts.** This document may be executed in any number of counterpart signature pages, all of which together will constitute the entire, original document.

**TRUSTEE'S ACCEPTANCE:**

THE CENTER FOR SPECIAL NEEDS
TRUSTS ADMINISTRATION, INC.

By:
Name: John Stanton
Title: Trust Officer

13

## Exhibit "A-1"

All proceeds set aside for the benefit of IVERSON KING, from the following lawsuit: Wanda King, On Behalf Of Her Minor and As Next Friend, Iverson King vs. Dr. Angela Savatiel and Vicksburg Healthcare, LLC d/b/a River Region Medical Center.

N:\ASSIST\SUPNEED.TRS\King, Iverson 6-18-07\1st party trs federal form #2.wpd

Exhibit "A-2"



THE
CENTER
FOR SPECIAL NEEDS
TRUST ADMINISTRATION, INC.

A not-for-profit corporation

## ANNUAL TRUSTEE FEE SCHEDULE

| Type of Trust | Asset Base | Annual Trustee Fee |
|---|---|---|
| The Florida Pooled Trust (d)(4)(C) | [1]Total Assets Held In Beneficiary's Sub-Account | 1.5% |
| Special Needs Trusts (d)(4)(A) | [1]Total Assets Held In Beneficiary's Account | 1.5% |

The Annual Trustee Fee covers basic fiduciary and administrative services, custodial services, cash flow management, and monitoring of public assistance benefits.

- *Administrative Fee.* A one-time administrative fee of [2]**$2,500.00**, for setting up the Beneficiary's Trust sub-account/account.
- *Additional Costs.* Additional costs will be charged as additional services become necessary or advisable. Some examples of additional costs include costs for asset management fees; professional fees for attorneys, guardians, and care managers; real estate management; and supplementary administrative services.
- *Extraordinary Services.* The Trustee reserves the right to charge for unusual or extraordinary services. In the event any such charges are incurred, the Trustee shall provide notice to the Beneficiary or the Beneficiary's representative by means of an interim Trust Accounting. In the event an annual Trust Accounting is due within sixty days of the extraordinary services being charged, notice of the charges shall be provided by means of the annual Trust Accounting.

---

[1] In circumstances where income is assigned to, and/or deposited in, the Beneficiary's sub-account/account, the annual projected income shall be included when valuing the sub-account/account, and calculating the annual fee. In circumstances where periodic payments from a structured settlement are assigned to, and/or deposited in, the Beneficiary's sub-account/account, the present value of the underlying qualified funding asset will be used when valuing the sub-account/account, and calculating the annual fee.

[2] $1800.00 for cases under $20,000.00, with no management fee.